| | | |
|---|---|---|
| JUDITH MATOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:04CV00724 |
| | ) | |
| LORILLARD TOBACCO COMPANY | ) | |
| GROUP DISABILITY INSURANCE PLAN, | ) | |
| and CONTINENTAL CASUALTY | ) | |
| COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION

TILLEY, Chief Judge

This suit arises from a dispute between Plaintiff Judith Matos and Defendants Lorillard Tobacco Company Group Disability Insurance Plan and Continental Casualty Company regarding Defendants' termination of Plaintiff's long-term disability income benefits on January 13, 2003. This case is before the Court on Plaintiff's Motion for Summary Judgment [Doc. #18] and Defendants' Motion for Summary Judgment or, alternatively, Defendants' Merit Brief [Doc. #22]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment will be DENIED, and Defendants' Motion for Summary Judgment will be GRANTED.

I.

Judith Matos began her employment with Lorillard Tobacco Company ("Lorillard") in 1984. At that time she entered into the Lorillard Tobacco Company

Group Disability Income Insurance Plan ("the Plan"), an employee benefit plan that provides long-term disability income coverage to the employees of Lorillard. Continental Casualty Company ("Continental Casualty") insures this plan and is responsible for administering claims brought under the Plan.[1] The Plan gives Continental Casualty "sole discretionary authority" to determine eligibility for benefits and to interpret the terms and provisions of the policy (Pol. at 26). The Plan includes a long-term disability coverage policy which provides disability benefits to eligible participants. The long-term disability policy requires the following proof of disability:

> The following items, supplied at [employee's] expense, must be part of [employee's] proof of loss. Failure to do so may delay, suspend or terminate [employee's] benefits. . . .
>
> . . . .
>
> . . . 5) Objective medical findings which support [employee's] Disability. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for [employee's] condition(s).
>
> 6) The extent of [employee's] Disability, including restrictions and limitations which are preventing [employee] from performing [employee's] Regular Occupation (Pol. at 20) (emphasis omitted).

Ms. Matos was working as a Field Sales Expense Clerk on June 7, 2002, when she stopped working because of low back and right leg pain. On October 7,

---

[1]Continental was assisted in this process by agents or affiliates which included CNA Group Life Assurance Company, which, like Continental, is one of several companies operating under or as part of CNA Insurance Companies.

2002, Plaintiff applied for long term disability benefits in accordance with the Plan and on November 12, 2002, was notified by Continental that her claim had been approved and benefits granted through December 16, 2002.

On November 19, 2002, Plaintiff underwent an L5-S1 partial hemilaminectomy and discectomy performed by Dr. John H. Sampson, a neurosurgeon at Duke University Medical Center.  In a December 5, 2002 letter, Continental Casualty informed the Plaintiff that her long-term disability benefits had been extended through January 13, 2003.  The letter explained Continental Casualty's reasoning for this date as follows: "Based on the usual duration of disability for someone with a similar condition and the medical information provided to us, you should be capable of a return to work on or before 1/14/03" (Admin. R. at 143).  The letter also informed Ms. Matos that if she was unable to return to work on that day, her attending physician must provide support of ongoing disability.  The letter specifies that "[a] note from your physician simply stating he/she is extending your disability will not be acceptable without supporting medical data" (Admin. R. at 143) (emphasis omitted).  On January 10, 2003, a "Request for Extension of Benefits" form was faxed to Continental Casualty in which Dr. Sampson indicated that Ms. Matos continued to complain of progressively worsening severe pain in her back and leg.  He indicated on that she may be able to return to work on approximately March 3, 2003.  Continental Casualty then sent a letter to Ms. Matos on January 14, 2003, denying her request

3

for extension of disability beyond January 13, 2003, and stating that Dr. Sampson's response did not give a basis for the extension other than Ms. Matos' own complaints of pain. They explained: "because we did not receive any **additional medical information** (i.e.: **clinical exams, test results, etc.**) that would allow us to conduct a review, we cannot allow further benefits at this time" (Admin. R. at 139) (emphasis in original).

Additionally, Dr. Sampson's notes reflect that Ms. Matos reported in a phone conversation on January 18, 2003 that "her symptoms had improved since the time of surgery, but she did have some residual back pain," and that "her leg symptoms had resolved as a result of the surgery" (Admin. R. at 127). At that time Dr. Sampson noted "there was no evidence of recurrent or residual disk disease and only [sic] minor scar," and that he would like to do some further testing to eliminate the possibility of infection and instability (Id.).[2] However, in a letter to Continental Casualty dated January 21, 2003, Dr. Sampson again recommended that Ms. Matos not return to work, citing her continued complaints of pain in her legs and feet and her inability to sit caused by her pain (Admin. R. at 134). He also noted that the MRI performed on 01/13/03 demonstrated "mild scar tissue" (Id.).

In response to this information, as well as the results of negative blood tests

---

[2] These tests were performed on January 31, 2003 and the results were negative for both infection and instability (See Admin. R. at 118-120).

4

and lumbar x-rays, Continental Casualty again denied Ms. Matos' request for extension of long-term disability benefits on February 20, 2003. In that letter, Continental Casualty explained that because the MRI and other tests performed since January 13, 2003 were negative, Ms. Matos' complaints of pain[3] were inconsistent with Dr. Sampson's office notes and test results, and because of the lack of medical evidence supporting Dr. Sampson's opinion that she was not able to return to work on 01/14/05, they were denying benefits beyond that date. In response to her request for reconsideration, on March 12, 2003, Continental Casualty provided an additional letter to Ms. Matos explaining it would not reverse its prior decision in the absence of new medical information or diagnostic testing supporting Dr. Sampson's restrictions, and was sending her information to Appeals for a formal review under ERISA as had been elected by Ms. Matos.

In an April 1, 2003 letter, Ms. Matos was informed that her appeal would be stalled in order to facilitate her request for more time to obtain medical records from her physicians. During this time, Ms. Matos was referred to and evaluated by a Dr. Anne Marie Frans of the pain clinic at Duke University Medical Center and a psychiatrist, Lakshmi Kamaraju, M.D., of Duke University Medical Center. After examination on April 2, 2003, Dr. Frans noted Ms. Matos' complaints of pain and

---

[3] Employees of Continental Casualty had two separate phone conversations with Ms. Matos, on February 6, 2003 and April 23, 2003, where she described her symptoms of pain and described its affects on her daily activities (Admin. R. at 74-76 & 124-25).

5

reported that she had "low back pain with right lower extremity pain with failed back surgery. . . neck pain with failed neck surgery syndrome . . . headaches . . . [and] depression" (Admin. R. at 67).  Additionally, on April 9, 2003, Dr. Kamaraju noted that Ms. Matos was severely depressed "which is affecting her pain making pain worse," and diagnosed her with "Mood Disorder Due to General Medical Condition" (Admin. R. at 68-72).

Upon receipt, Continental Casualty forwarded these and the previous medical records in Ms. Matos' file to two physicians at Behavioral Management, Inc. – Dr. Karen R. Kane, board certified in occupational, preventive, and internal medicine and Dr. Scott Yarosh, board certified in internal medicine and psychiatry – for an independent review.  In a report dated May 27, 2003, Dr. Kane opined that based on her review of these records it was appropriate for Ms. Matos to remain off work until the contemplated tests were completed, however given the nature of Ms. Matos job, "by 01/31/03, significant medical complications from surgery were ruled out and healing was sufficient to return to work" (Admin. R. at 60).  Dr. Kane additionally suggested that returning to work may be "therapeutic" for both Ms. Matos' reports of chronic pain and her depression by "decreasing social isolation and providing a distraction from her pain" (Id.).  Dr. Yarosh agreed that evidence suggested Ms. Matos suffered from depression, but stated "[t]here is no evidence in the medical records to suggest that she had a psychiatric condition at that time that would be so severe as to cause impairment to the point she

6

cannot work" (Admin. R. at 59).

On May 28, 2003, a letter was sent to Ms. Matos by the Appeals Committee informing her of their determination that the denial of benefits beyond January 13, 2003, was "correct, proper, and true to the policy [held] through Lorillard Tobacco Company…" (Admin. R. at 52). Ms. Matos was also informed this was the company's final decision and her file had been closed.[4] The letter did not advise Ms. Matos of her appeal rights under ERISA.

On August 12, 2004, Ms. Matos filed the current action for declaratory, compensatory, and injunctive relief asserting a right to long-term disability income benefits arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, and more particularly 29 U.S.C. § 1132(a)(1)(B) [Doc. # 1]. She filed a Motion for Summary Judgment [Doc #18] and supporting Brief [Doc. #19] on April 29, 2005. Defendants then filed a Motion for Summary Judgment or, Alternatively, Defendants' Merit Brief [Doc.# 22] and supporting Brief [Doc. #23] on May 27, 2004.

II.

---

[4] Although Ms. Matos continued to challenge the decision of Continental Casualty through additional letters and medical records, review of the administrator's decision is limited to consideration of the information received by the plan administrator up to the time of the final decision, here May 28, 2003. See Elliott v. Sara Lee Corporation, 190 F.3d 601, 608-09 (4th Cir. 1999) ("When a district court reviews a plan administrator's decision under the abuse of discretion standard, 'an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time.'").

7

Summary judgment is proper only when there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. In other words, the materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine as to such facts if the evidence is sufficient for a reasonable trier of fact to find in favor of the nonmoving party. Anderson, 477 U.S. at 248. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In evaluating a motion for summary judgment, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party. See Fed. R. Civ. P. 56(e). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson, 477 U.S. at 249. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." Mitchell v. Data General

8

Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).

III.

The applicable standard of review by a district court of the denial of benefits under ERISA plans is well-settled. If a plan administrator is granted discretionary authority to determine eligibility or to construe the terms of the plan, the denial of benefits must be reviewed for abuse of discretion. See Firestone Tire and Rubber Co. v. Branch, 489 U.S. 101, 111, 115 (1989); Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). Under this standard the administrators' decision will not be disturbed so long as it is reasonable, even if this court would have come to a different conclusion independently. Ellis, 126 F.3d at 232. A decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Id. (quoting Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995)). In the present case, the Plan clearly states: "The plan administrator has delegated sole discretionary authority to Continental Casualty Company to determine [employee's] eligibility for benefits and to interpret the terms and provisions of the Policy" (Pol. at 26). Thus, it is clear that the Plan gives Continental Casualty discretionary authority to make eligibility determinations, triggering the abuse of discretion standard.

Ms. Matos argues that because Continental Casualty serves as both fiduciary of the Plan's beneficiaries and the Plan's insurer, there is a conflict of interest. Although under ERISA, a plan fiduciary is obligated to act "solely in the

interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), ERISA also anticipates that conflicts of interests are inherent in benefit determinations. Willis v. Baxter Int'l Inc., 175 F.Supp.2d 819, 826-27 (W.D.N.C. 2001). Thus, there also exists a well-developed framework for considering such conflicts of interest in a court's review of denial of benefits under ERISA. Id. Where a conflict of interest is shown, the deference to the decision of the fiduciary "will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." Ellis, 126 F.3d at 233. The abuse of discretion standard is still applied, however, the court modifies it according to a sliding scale. Id. "The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." Id. Here, Continental Casualty's dual role of plan administrator and plan insurer indeed creates such a conflict of interest necessitating the application of the sliding scale standard of review.[5] See, e.g., id. (applying sliding scale because MetLife was both fiduciary of Plan's beneficiaries and plan's insurer); Willis, 175 F.Supp.2d at 827 ("[P]laintiff has satisfactorily shown the probability of

---

[5] Defendants' argument that Continental Casualty has no conflict of interest because there is little, if any, financial incentive to deny Plaintiff's claim since the amount of money at issue here has "no appreciable impact on the financial health of Continental Casualty, CNA or Hartford," was rejected in Boyd v. Liberty Life Assurance Co. 362 F.Supp.2d 660, 665 (W.D.N.C. 2005) (quoting Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 86-87 (4th Cir. 1993)).

10

a conflict of interest, inasmuch as the decision makers were both fiduciaries under the plan and employees and/or agents of the employer and carrier who ultimately would have been required to foot the bill had a decision favorable to the plaintiff been rendered."). Thus, review of Continental Casualty's decision will determine "whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." Ellis, 126 F.3d at 233.

The Court of Appeals for the Fourth Circuit has identified a list of factors for consideration by the reviewing court in determining whether discretion has been abused: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.[6] Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan, 201 F.3d 335, 342-43 (4th Cir.

---

[6] A conflict of interest by the fiduciary can be taken into consideration at several points in a district court's review of an administrator's decision. See Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan, 201 F.3d 335, 343 n.2 (4th Cir. 2000) ("A fiduciary's conflict of interest, in addition to serving as a factor in the reasonableness inquiry, may operate to reduce the deference given to a discretionary decision of that fiduciary.").

11

2000).

## IV.

In the instant case, Ms. Matos' contends that Continental Casualty's denial of long-term disability benefits beyond January 13, 2003 was an abuse of discretion because her subjective complaints of pain should have been sufficient to support a finding of disability. She also claims that the plan administrator arbitrarily disregarded the recommendation of her treating physician that she was not capable of returning to work on January 14, 2003. Ms. Matos failed, however, under the terms of the plan to provide sufficient medical evidence to support her disability. The terms of the Plan are clear regarding the requirement of "objective medical findings" to support an employee's disability (Pol. at 20). The Plan also provides the following description of what would be considered objective medical finding: "Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for [employee's] disability condition(s)" (Id.). Ms. Matos was reminded of this requirement in the December 5, 2002 letter from Continental Casualty. In that letter, Continental Casualty explained that the Plan required more than a note from her attending physician extending disability and that she must provide "supporting medical data" of disability for benefits to be extended. Ms. Matos' response was a note from her physician, Dr. Sampson, requesting an extension of disability, accompanied only by a report of Ms. Matos' own complaints of pain. No

12

additional medical information was provided by Dr. Sampson on that date or any subsequent date to show a physically discernable basis for the pain Ms. Matos was reporting. In fact, the records received by Continental Casualty, including her MRI, x-rays of the lumbar spine, and blood work, pointed to no objective basis for the source of Ms. Matos' complaints of pain.

Ms. Matos argues, however, that her subjective complaints of pain should satisfy the plan's requirement for "objective medical findings" supporting her disability. The necessary consideration of subjective complaints of pain by plan administrators in ERISA cases is unsettled. Ms. Matos' cites several decisions that suggest that a plan administrator should not ignore subjective complaints of pain in determining the level of disability of the claimant (Pl.'s Br. Supp. Summ. J. 17). See, e.g., Willis, 175 F.Supp.2d at 833-34 (suggesting that once an underlying physical or mental impairment is shown by medically acceptable objective evidence, the adjudicator must evaluate the disability effects of claimant's pain, even if intensity or severity is only shown by subjective evidence); Conrad v. Continental Casualty Co., 232 F.Supp.2d 600, 604 (E.D.N.C. 2002) (finding administrator's decision to deny long term disability coverage unreasonable when a motivating factor was the absence of objective evidence of her disability, fibromyalgia). Ms. Matos' reliance on these cases is problematic. First, she has not presented evidence of an underlying impairment that caused her complaints of pain as was required in Willis. More importantly, however, the cases cited by Ms.

13

Matos rely on cases in the Social Security context to form the rule regarding subjective evidence of pain.

Recently in <u>Smith v. Continental Casualty Co.</u>, the Court of Appeals for the Fourth Circuit held that the district court erred when it relied upon a Social Security Ruling requiring a plan administrator to credit self-reports of disability pain. 369 F.3d 412, 418-21 (4th Cir. 2004). The <u>Smith</u> court criticized the importation of Social Security rulings into ERISA cases, citing the Supreme Court's discussions of the different goals advanced by Social Security and ERISA. Specifically, the Court explained that ERISA's goal is to protect the contractually defined benefits between employees and employee benefit plans and, therefore, turns more on the interpretation of the terms of the plan at issue. However, in Social Security cases the claimant's condition is measured against a uniform set of federal criteria. <u>Id.</u> (citing <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822 (2003)).

The Plan at issue here required Ms. Matos to provide "objective medical evidence" of her disability. Objective medical evidence is clearly defined in the terms of the Plan. Although reminded of these provisions, Ms. Matos failed to present documentation from either her treating physician or others to show an underlying physical or mental impairment to support a finding of long-term disability.[7] In fact, there was no clear statement, even from Ms. Matos' own

---

[7] Ms. Matos' citation to academic literature on failed back and/or neck surgery syndrome in her Response to the Defendants' Motion for Summary Judgment [Doc. #24] fails to show that such opinions were provided by a

14

physicians, of what was causing Ms. Matos' reported pain. Her lumbar spine x-rays and blood tests were negative. The MRI conducted on 01/13/2003 showed "no evidence of recurrent or residual disk disease and only minor scar" (Admin. R. at 127). Continental Casualty paid disability benefits to Ms. Matos for the usual duration of disability following her back surgery. Continental Casualty also afforded Ms. Matos over four months following its termination of benefits, including stalling her appeal at her request, to provide objective medical evidence of the cause of her inability to return to work before closing her claim on May 28, 2003. Ms. Matos failed to provide such evidence.

Ms. Matos' claim that it was an abuse of discretion for Continental Casualty to reject the opinion of her treating physician, Dr. Sampson, regarding her disability is also misplaced.[8] Black & Decker Disability Plan v. Nord, clearly established that no treating physician rule exists in ERISA cases. 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence

---

physician regarding her condition and symptoms at the time of Continental Casualty's review. It is thus irrelevant to the review of that determination.

[8] Plaintiff's reliance on Dr. Frans' impression of low back pain with right lower extremity pain with failed back surgery, neck pain with failed neck surgery syndrome, headaches and depression, does not change this analysis. Dr. Frans' opinion was based on self reported symptoms from Ms. Matos and did not add the required objective evidence of an actual physical impairment to support her claim for long-term disability benefits.

15

that conflicts with a treating physician's evaluation."). However, "plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id.

In the present case, Continental Casualty, did not arbitrarily reject the opinion of Ms. Matos' treating physician. The Fourth Circuit has held that it is not an abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented. Elliott v. Sara Lee Co., 190 F.3d 601, 606 (4th Cir. 1999). Here, the plan administrator, Continental Casualty, was presented with conflicting opinions from various physicians regarding Ms. Matos' ability to return to work. Dr. Sampson opined on several occasions that she would not be able to return on the scheduled date of January 14, 2003. As noted above, however, Dr. Sampson did not suggest that there was an objective medical condition responsible for Ms. Matos' reports of pain. Additionally, Dr. Sampson's own reports included inconsistencies. For example, Dr. Sampson's January 18, 2003 telephone note reflects an improvement in Ms. Matos' levels of pain. In that same note, Dr. Sampson also discusses his review of Ms. Matos' MRI stating, "I told her that there was no evidence of recurrent or residual disk disease and only a minor scar" (Admin. R. 127). Then, only three days later, Dr. Sampson again recommended to Continental Casualty that Ms. Matos not return to work, but did not provide any additional findings or support for his recommendation.

Additionally, Drs. Kane and Yarosh conducted an independent medical

16

review of Ms. Matos records and both opined that her return to work was possible. Dr. Kane even suggested return to work may provide relief of some of Ms. Matos' reported pain symptoms. Given the conflicting recommendations between Ms. Matos' treating physician and those physicians who conducted the independent medical review of Ms. Matos' medical records, Continental Casualty's denial of benefits was not an abuse of discretion. See Ellis, 126 F.3d at 234 (finding no abuse of discretion under sliding scale analysis in denial of benefits where claimant's primary medical provider's finding of disability conflicted with an independent panel of medical specialists); Booth, 201 F.3d at 345 ("Confronted with this record of conflicting opinion, it was within the discretion of the Administrative Committee – indeed it was the duty of that body – to resolve the conflicts…").

V.

For the reasons set for above, Plaintiff's Motion for Summary Judgment will be DENIED, and Defendants' Motion for Summary Judgment will be GRANTED.

This the day of September 15, 2005

    /s/ N. Carlton Tilley, Jr.
United States District Judge

17

Case 1:04-cv-00724-NCT   Document 33   Filed 09/15/05   Page 17 of 17